# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BETH LANE, TIFFANY LANE, AND SARAH BLEAKLEY, | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 15-CV-06570 |
| v. | )<br>) Judge John J. Tharp, Jr. |
| MARY JO LANE and U.S. FINANCIAL LIFE INSURANCE CO., | )<br>)<br>) |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Beth Lane, Tiffany Lane, and Sarah Bleakley allege that their stepmother, defendant Mary Jo Lane, fraudulently changed the beneficiary of their father's life insurance policy. They further argue that the life insurance company, defendant U.S. Financial Life Insurance Company, breached their contract by failing to detect Mrs. Lane's purported fraud and instead paying the policy to her. The defendants have now moved for summary judgment, which is granted as to the Company and denied as to Mrs. Lane.

## BACKGROUND

The Court construes all facts and inferences in favor of the non-movants (the plaintiffs), as it must on summary judgment. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). Beth Lane, Tiffany Lane, and Sarah Bleakley (the plaintiffs in this action) are the daughters of Jeffrey Lane. *See* Def.'s Statement of Facts ("DSOF") ¶ 8, ECF No. 50. When Mr. Lane died on November 11, 2014, one of the assets he left behind was a $400,000 life insurance policy issued by defendant U.S. Financial Life Insurance Company ("the Company"). *Id*. at ¶ 5. On January 6, 2015, the Company paid Mr. Lane's widow, defendant Mary Jo Lane, the proceeds of the insurance policy and a refund of some premiums for a total payment of

$400,160.60. *Id*. at ¶ 38. The core of this dispute is whether the Company should have paid the benefits to the plaintiffs rather than Mrs. Lane.

In 2007, Mr. Lane designated the plaintiffs (his daughters) as the beneficiaries of his life insurance policy. DSOF ¶ 8. Two years later, Mr. Lane became engaged to the future Mrs. Lane, then named Mary Jo Wiltshire. *Id*. at ¶ 9. In 2011, Mr. Lane and Ms. Wiltshire purchased and moved into a home together in Cedar Lake, Indiana, taking on approximately $400,000-500,000 in debt. *Id*. at ¶ 10. Mr. Lane and Ms. Wiltshire were married on October 28, 2011 and Mary Jo changed her last name to Lane. *Id*. at ¶ 20. Mrs. Lane testified that in anticipation of their marriage, she and Mr. Lane began changing beneficiary designations. *Id*. at ¶ 21. Mrs. Lane, for example, changed her life insurance and 401(k) beneficiary to Mr. Lane. *Id*. at ¶ 22-24.

Several months earlier, on August 10 and 11, 2011, a person who identified himself as Mr. Lane called the Company to inquire about the benefits under his policy.[1] DSOF ¶ 11. In response to these conversations, the Company sent beneficiary change forms to Mr. Lane's email address. *Id*. On or about August 23, 2011, the Company received a Title Change Form identifying Mr. Lane's policy and requesting the beneficiary be changed to "Fiancé/Mary Jo Wiltshire." *Id*. at ¶ 12-15. One part of the form, which addresses potential changes of ownership, was only partially completed. *Id*. at ¶ 16.

This form is the heart of this case. The form is signed, and the Company asserts it at least appears to bear Mr. Lane's signature. *See* DSOF ¶ 12. The plaintiffs dispute that the signature on the form is, or even appeared to be, Mr. Lane's signature. *See* Pl.'s Resp. to Facts ¶ 12. Part of

---

[1] The Company asserts it was Mr. Lane who called, while the plaintiffs assert that there is no conclusive proof that the caller was in fact Mr. Lane and not an imposter. *See* Pl.'s Resp. to Facts ¶ 11, ECF No. 60. The Company's records indicate the caller was Mr. Lane. *See* Ramsden Decl. ¶ 7, Ex. 80, ECF No. 52. The plaintiffs have introduced no evidence that Mr. Lane was not the caller, but it does not matter for the purpose of this motion.

the issue is that while the Company undisputedly received the form in 2011 and scanned the form into its system, the Company failed to process the change in beneficiary or send any of the typical confirmation documents to Mr. Lane. DSOF ¶ 17; Pl.'s Statement of Additional Facts ("PSOF") ¶ 10, ECF No. 60. Thus, when Jeffrey Lane died in 2014, the Company's records still listed his daughters, the plaintiffs, as the beneficiaries of the policy. DSOF ¶ 29.

This conflict between the 2007 and 2011 beneficiary designations came to light on November 20, 2014 when Mrs. Lane called to report that Mr. Lane had died. DSOF ¶ 28-29. The Company representative who took Mrs. Lane's call noticed the improperly recorded 2011 designation form. *Id*. at ¶ 29. The representative emailed an associate (Ava Carr) asking whether the form should be processed and the beneficiary updated, noting in passing that "FYI – I have also reviewed the signature from the change vs the app file – does not look like the same signature." *See* Pl.'s Ex. 32 at 5, ECF No. 62. The representative then followed up a few moments later clarifying that she was asking Carr to "review and tell if this change should have been accepted or not in 2011?" *Id*. at 4. Carr responded that she believed the form should not be processed because it was incomplete, but that she was unsure. *Id*. Her response did not mention the signature match issue. The issue was forwarded to a more senior associate, Dennis Newton, who opined that the form was sufficient and should be processed. *Id*. at 2. Based on Newton's advice, the representative then updated the beneficiary to Mrs. Lane. *Id*. At her deposition, Carr testified that she had compared the signature from the form to the initial application by Mr. Lane while evaluating whether the form should be processed and believed that the signatures matched. *See* Carr Dep., 34:2-19 Mar. 10, 2016, Ex. 87, ECF No. 52. Newton did not examine the signatures himself. *See* Newton Dep. 35:17-20 Mar. 10, 2016, Ex. 88, ECF No. 52.

3

Both parties have submitted significant and competing evidence as to the authenticity of the signature. Mrs. Lane testified that she did not sign the Title Change Form and that Mr. Lane showed her the form in 2011. DSOF ¶ 19. She further testified that Mr. Lane gave her a note in 2014 that indicated she should receive all his possessions and the plaintiffs should receive nothing. *Id*. at ¶ 25. The plaintiffs, on the other hand, all testified that the signature on the form is not their father's. PSOF ¶ 32. According to the plaintiffs, Mr. Lane told them repeatedly (including in 2014 shortly before his death) that they were the beneficiaries of his life insurance policy. *Id.* at ¶ 2. The plaintiffs further testified that they did not know which insurance company the policy was with until January 29, 2015 (explaining why they had not submitted a claim immediately after their father died). *Id*. at ¶ 3. Each side has produced an expert to support their view. Plaintiffs' expert, Ellen Mulcrone Schuetzner, opined there are "indications" that the signature is not Mr. Lane's. *Id*. at ¶ 33. Defendants' expert, Jane Lewis, opined that there are "indications" that the signature is Mr. Lane's. *Id*. at ¶ 39.

The Company changed the beneficiary to Mrs. Lane on December 4, 2014. DSOF ¶ 35. The Company received a claim form from Mrs. Lane on December 23, 2014. *Id*. at ¶ 36. The Company had not received any competing claim forms and paid Mrs. Lane's claim on January 6, 2015. *Id*. at ¶ 37-38. The plaintiffs filed this lawsuit on July 28, 2015 against Mrs. Lane and the Company.

## DISCUSSION

The Company has now moved for summary judgment on Counts IV and V (breach of contract and declaratory judgment, the only counts in which it is named). Mrs. Lane joined the motion and asked that it be applied to the counts against her (for common law fraud, conversion, tortious interference with inheritance, and declaratory judgment) without further argument. Thus,

the Court treats the motion for summary judgment as a motion on behalf of both defendants. For the reasons stated below, the motion is granted as to the Company and denied as to Mrs. Lane.

The first argument by the defendants is that the plaintiffs have failed to put forward sufficient evidence such that a reasonable jury could find the signature is fraudulent. Summary judgment, of course, is appropriate if there are no disputes of material fact and the movant is entitled to judgment as a matter of law. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015). If the signature is in fact Mr. Lane's, the money was rightfully dispensed to Mrs. Lane and all claims would be resolved against the plaintiffs. Under Illinois law, common law fraud must be proved by clear and convincing evidence. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005). Clear and convincing evidence "leaves no reasonable doubt in the mind of the fact finder as to the truth of the proposition in question." *Bazydlo v. Volant,* 647 N.E.2d 273, 276 (Ill. 1995).[2] Although it seems unlikely that the plaintiffs can meet this burden at trial, the Court cannot say that as a matter of law they cannot do so with the evidence they have presented here.

Whether or not the plaintiffs have presented clear and convincing evidence as to the authenticity of the signature depends largely on the jury's credibility determinations. The opinions of the parties' respective experts do not begin to resolve the issue. Both experts opined to mere "indications," which one expert described as a "weak qualified opinion." *See* Lewis Dep. 40:11-19 Aug. 2, 2016, Ex. 100, ECF No. 62. Plaintiffs' expert noted that her findings were

---

[2] The Illinois Supreme Court has said that, "[a]lthough stated in terms of reasonable doubt, courts consider clear and convincing evidence to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense." *Bazydlo v. Volant*, 164 Ill. 2d 207, 213, 647 N.E.2d 273, 276 (1995). The Illinois Supreme Court has not explained, however, how to distinguish a civil standard of proof that requires a showing that there is no reasonable doubt about the matter at issue with the familiar criminal standard of proof that requires proof beyond a reasonable doubt.

limited as well because she did not have access to the original form. *See* Schuetzner Dep. 104:2-5 June 16, 2016, Ex. 99, ECF No. 62. A jury that found Mrs. Lane not credible and the plaintiffs credible might determine that the signature was forged. A reasonable jury could also go the other way and believe Mrs. Lane and not the plaintiffs. It is axiomatic that "credibility is not an issue to be resolved at summary judgment, but is one reserved for the jury." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 408 (7th Cir. 2008). The Court cannot say that no reasonable jury could find for the plaintiffs, so the motion for summary judgment must be denied as to Mrs. Lane.

The Company, however, raises other arguments as to why it should be granted summary judgment. The easiest to resolve relates to Count V, which seeks a declaratory judgment and a constructive trust. A constructive trust, however, can only be established when a party is in possession of wrongfully acquired property. *See Blumenthal v. Brewer*, 69 N.E.3d 834, 848 (Ill. 2016) ("A constructive trust is an equitable remedy, which may be imposed where the person in possession of the property would be unjustly enriched if he or she were permitted to retain that property."). Here, it is undisputed that the Company paid the proceeds to Mrs. Lane and thus is no longer in possession of the property the plaintiffs seek. The plaintiffs respond that they could still receive a declaratory judgment that the Company's action was erroneous even if no constructive trust is imposed. However, a "declaratory judgment that adds nothing to the plaintiffs' claims for monetary damages for the same violations serves no purpose." *House of Brides, Inc. v. Alfred Angelo, Inc.*, 163 F. Supp. 3d 534, 547 (N.D. Ill. 2016). Declaratory relief may be given at the Court's discretion, 29 U.S.C. § 2201(a), and the Court sees no need to do so here as the substance of the declaratory judgment count is identical to those of the other counts. Thus, the Court grants the Company's motion for summary judgment (as to the Company only) on Count V.

Finally, the Court must address whether the Company is entitled to summary judgment on Count IV (breach of contact). The plaintiffs assert that the Company violated its own policies and the terms of the insurance policy when it (allegedly) erroneously paid the policy to Mrs. Lane. In Illinois, however, "an insurer is discharged from liability on an insurance policy if it, while acting in good faith, pays the proceeds to the named beneficiary." *Iverson v. Scholl, Inc.*, 483 N.E.2d 893, 897 (Ill. App. Ct. 1985). "The insurer's obligation of good faith requires a reasonable investigation by the insurer when it is aware of suspicious circumstances regarding a beneficiary." *Id*. If such an investigation "would have disclosed facts sufficient to defeat the named beneficiary's claim," then the insurer can be sued. *Id*. Here, even assuming the Company had been made aware of "suspicious circumstances" when the representative emailed her note that she did not believe the signatures matched, a reasonable investigation would not have disclosed facts sufficient to defeat the named beneficiary's claims. What would the plaintiffs have the Company do? Lengthy discovery in this case has not disclosed facts that definitively resolve the mystery; that is why the claims against Mrs. Lane must be tried. Here, the Company did investigate by having Carr review the signatures, which she determined matched. The plaintiffs have expressly disclaimed the idea that the Company was required to hire a handwriting expert in order to evaluate the signatures. *See* Pl.'s Mem. at 8. Rather, the plaintiffs argue that the Company "did not perform any investigation," but that is plainly wrong – the representative contacted Carr (who reviewed the signatures) and Newton (who reviewed the incomplete form). This investigation led the company to determine that the signature was valid and Mrs. Lane should be paid.

The plaintiffs also appear to assert that the Company failed to follow its own policy by failing to send the Lane account to a special fraud unit. The Company's policy, however, does

7

not determine what constitutes a reasonable investigation under the circumstances; the Company policy may well comport to a higher (or lower) standard than a finding of "good faith" requires. In any event, the evidence does not establish that the Company failed to follow its own policy. The company policy documentation indicates that if information does not match it should be forwarded to an associate, as it was here. *See* Pl.'s Ex. 26 at 2, ECF No. 62. In fact, the documents clearly state that the associate should compare the signatures (as Carr did here when she found them sufficiently similar). Pl.'s Ex. 33 at 2, ECF No. 62. Although the Company's "general guidelines" state that "suspected fraud" should be sent to a special fraud unit, those guidelines also state that suspected fraud must be considered in the totality of the circumstances before being sent to the fraud unit. *See* Ex. 34 at 2, ECF No. 62. Here, one employee thought the signatures might not match in the context of whether or not a benefits form would have been accepted back in 2011. A more experienced employee determined they did match. The supporting evidence known by the Company–that Mrs. Lane was Mr. Lane's fiancée in 2011 and was now identifying as his wife and calling to report his death three years later–would not have raised inferences of possible fraud. No other claims on the policy had been received. None of this evidence evinces bad faith or any sort of desire to assist in Mrs. Lane's alleged fraud. Thus, the Company is entitled to its good faith defense and is granted summary judgment as to Count IV.

*   *   *

For the reasons set forth above, the Company's motion for summary judgment is granted as to the Company. The motion for summary judgment is denied in its entirety as to Mrs. Lane.

Dated: August 9, 2017

John J. Tharp, Jr.
United States District Judge